**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-1806-RM-MEH

WWW.TURNSTILES.US, INC.,

    Plaintiff,

v.

MODULAR SECURITY SYSTEMS, INC.,

    Defendant.

___

**OPINION AND ORDER**
___

On August 20, 2015, plaintiff www.Turnstiles.us, Inc. ("plaintiff") filed a Complaint against defendant Modular Security Systems, Inc. ("defendant"), seeking a declaratory judgment as to four claims (Claims 1-4) and monetary damages with respect to two claims (Claims 5-6). (ECF No. 1.) Specifically, plaintiff sought declaratory judgments that U.S. Patent Nos. 8,015,754 and 8,671,624 were invalid and/or that plaintiff had not infringed upon those patents. Plaintiff also sought monetary damages with respect to defendant's alleged wrongful interference with a prospective business advantage and unfair competition. (*Id*. at ¶¶ 9-37.) In addition, plaintiff alleged that this Court has personal jurisdiction over defendant because defendant "transact[ed] business pertaining to modular turnstile buildings within the State of Colorado, and [ ] directed [its] accusations of infringement relating to Plaintiff's sales of its modular turnstile buildings to residents of Colorado." (*Id*. at ¶ 4.)

On September 21, 2015, defendant filed a motion to dismiss the Complaint ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(2) ("Rule 12(b)(2)"), on the ground that this Court lacked personal jurisdiction over defendant. (ECF No. 9.) In doing so, defendant submitted an affidavit of Kevin Harrison, defendant's Vice President. (ECF No. 9-2.) Plaintiff has responded in opposition to the motion to dismiss, and submitted a declaration of Patrick McAllister, plaintiff's President.[1] (ECF Nos. 20, 20-2.) Defendant has filed a reply, submitting a supplemental affidavit of Mr. Harrison. (ECF Nos. 23, 23-1.)

## I. Legal Standard

As an initial matter, the parties agree that the law of the Federal Circuit Court of Appeals, rather than the Tenth Circuit Court of Appeals, applies to this case because the claims in the Complaint involve patent law and/or patent law will be a significant factor in resolving the non-patent law claims. (*See* ECF No. 9 at 4-5; ECF No. 20 at 2-3); *see also Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998). Therefore, the Court will apply Federal Circuit law in determining whether it has personal jurisdiction over defendant.

---

[1] The Court makes the following observations about Mr. McAllister's declaration. Other than explaining Mr. McAllister's position at plaintiff, and that Mr. McAllister performed an internet search and believes that defendant provides a one-year warranty for its products, the declaration does not attempt to set forth any factual statements within the personal knowledge of Mr. McAllister. Instead, the declaration is simply a regurgitation of arguments from plaintiff's response to the motion to dismiss. (*Compare* ECF No. 20-2 at ¶¶ 7-13, *with* ECF No. 20 at 5-10.) For example, Mr. McAllister states that: "While Mr. Harrison's [affidavit] may be correct in that none of the advertisement[s] produced by Defendant is specifically directed at Colorado residents, the advertisement as delivered through the Internet is clearly targeted at Colorado residents"; "Defendant's assertion [about having a passive website] does little, or nothing, to rebut the fact that its Internet advertising is directed at Colorado." (ECF No. 20-2 at ¶¶ 7-8.) The Court could go on for some time with similar statements from Mr. McAllister's declaration, but that would largely be beating a dead horse. Suffice to say, the purpose of a lay witness' declaration or affidavit is not to argue the alleged deficiencies in another affiant's written statement.

Under Federal Circuit law, when an evidentiary hearing has not been held, and a motion to dismiss is decided simply upon written materials, "a plaintiff need only to make a *prima facie* showing that [the] defendant[] [is] subject to personal jurisdiction." *Elecs. For Imaging*, 340 F.3d at 1349. In that regard, "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id*. However, a plaintiff is only entitled to reasonable inferences from the alleged facts. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

## II.     Jurisdictional Facts

Defendant is an Ohio corporation, with it principal place of business in Ohio. (ECF No. 1 at ¶ 3.) Plaintiff and defendant are competitors in the business of modular turnstile buildings. (*Id*. at ¶ 6.) Defendant has sent letters to plaintiff asserting that two of defendant's patents (U.S. Patent Nos. 8,015,754 and 8,671,624) "read directly" on one of plaintiff's modular turnstile buildings. (*Id*. at ¶ 4.) Defendant has warned plaintiff that defendant would take further legal action against plaintiff if plaintiff did not stop offering its modular turnstile building. (*Id*.)

Defendant conducts business in Colorado related to modular turnstile buildings. (*Id*. at ¶ 4.) Specifically, defendant sold the following items that had some connection to Colorado: (1) in 2010, defendant sold a MAC-4 unit and related equipment to a Colorado company; (2) in 2012, defendant sold a MAC-6 unit and related equipment to a Colorado company; (3) in 2012, defendant sold a guardhouse to a Colorado company; (4) in 2013, defendant sold a MAC-2 unit to a Nebraska company, with the unit being shipped to Colorado; and (5) in 2014, defendant sold a MAC-4T unit to a Nebraska company, with the unit being shipped to Colorado. (ECF No. 9-2 at ¶¶ 10-14.)

Since 2007, defendant has sold approximately 628 access control units and rented approximately 115 access control units. (*Id*. at ¶ 15.) Since 2007, defendant has not rented any of its products to a Colorado business or shipped any rental products to Colorado. (ECF No. 23-1 at ¶ 4.) Defendant provides a one-year warranty with its products. (ECF No. 20-2 at ¶ 14.) Since 2007, defendant has not performed any warranty work in Colorado. (ECF No. 23-1 at ¶ 5.)

Defendant does not have an appointed agent for service of process in Colorado. (*Id*. at ¶ 4.) Defendant does not own or lease real or personal property in Colorado. (*Id*. at ¶ 5.) Defendant does not maintain any offices in Colorado. (*Id*.) Defendant does not maintain any bank accounts in Colorado. (*Id*. at ¶ 6.) Defendant does not maintain any telephone or facsimile listings in Colorado. (*Id*. at ¶ 7.) Defendant has never paid or owed income taxes to the State of Colorado. (*Id*. at ¶ 16.)

Defendant's website does not provide pricing information or permit ordering. (*Id*. at ¶ 9.) In order to make a purchase from defendant, users of the website must send an email message to or call defendant. (*Id*.) Mr. McAllister performed an internet search on Google for the terms "modular turnstile buildings" and "modular turnstile buildings Colorado." (ECF No. 20-2 at ¶ 6.) After both searches, defendant's business name appeared on the first page of the search results. (*Id*.)

**III.   Discussion**

Plaintiff devotes most of its response to the motion to dismiss by focusing upon whether this Court has specific personal jurisdiction over defendant. (*See* ECF No. 20 at 11-14.) Plaintiff does, however, momentarily discuss general personal jurisdiction as well (*see id*. at 15), so this Court will address both components of the personal jurisdiction analysis.

4

A.      **Specific Personal Jurisdiction**[2]

The exercise of specific personal jurisdiction over a defendant encompasses two themes: (1) where an entity's in-state activity is "'continuous and systematic' and that activity gave rise to the episode-in-suit"; and (2) where "the commission of certain 'single or occasional acts' in a State may be sufficient to render [an entity] answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 923, 131 S.Ct. 2846 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945)) (emphasis omitted). Essentially, jurisdiction is specific "when the suit 'arises out of or relates to the defendant's contacts with the forum.'" *Id*. at 923-924 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868 1984)) (alterations omitted).

Plaintiff asserts that defendant's contact with Colorado involves defendant using its website to target Colorado residents with internet advertisements, and defendant responding to invitations for bids from Colorado residents. (ECF No. 20 at 11-12.) Plaintiff then asserts that these contacts are related to its claims because defendant has told plaintiff's potential customers that plaintiff's products violate defendant's patents, and thus, defendant has engaged in patent enforcement activity in Colorado. (*See id*. at 14.) There are a multitude of problems with these assertions.

First, the Court disagrees with plaintiff's characterization of defendant's website. Other than Mr. McAllister searching the internet through Google, there is nothing in the record to support the contention that defendant uses its website as a tool to target Colorado residents, especially given that

---

[2] Because Colorado's long-arm statute confers the maximum jurisdiction permissible under the Due Process Clause, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008), this Court turns straight to the constitutional analysis.

the results from the search engine are controlled by a third-party.[3] Plaintiff points to no aspect of the website, other than its existence, indicating that it is targeted toward Colorado residents. In any event, even if defendant's website was targeted at Colorado residents, there is no allegation from plaintiff that the website has any connection to the claims in this case, which plaintiff describes as patent enforcement activities. Notably, there is no allegation that defendant's website states, in any fashion, that plaintiff's products infringe defendant's patents or anything else that could be reasonably construed as an attempt at patent enforcement. As such, defendant's website is entirely irrelevant to the specific personal jurisdiction analysis.

Second, accepting for present purposes that defendant has responded to invitations for bids, there is again no allegation that, in responding, defendant engaged in any patent enforcement activities. Plaintiff instead alleges, in a general fashion, that defendant has told plaintiff's customers that there may be patent problems with plaintiff's products. (*See* ECF No. 20 at 3, 14; ECF No. 1 at ¶¶ 29, 33.) At no point does plaintiff identify any of these potential customers, or, more specifically, allege that any of these customers were a party that issued one of the invitations for bids. Nor does plaintiff allege that any of the units that defendant sold to Colorado businesses or sent to Colorado between 2010 and 2014 were in any way connected to defendant's alleged "[b]admouthing" of plaintiff. (*See id.* at 3.)

Plaintiff cites *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), and *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), but neither decision helps. In *Campbell Pet Co.*, the Federal Circuit reversed the dismissal of a case on personal jurisdiction grounds, concluding that specific personal jurisdiction existed because the defendant attempted to

---

[3] To the extent that Google search results may be influenced by search engine optimization techniques, there is no allegation that defendant has utilized such practices.

have the plaintiff's products removed from a convention in the forum state, and the defendant told the plaintiff's customers that plaintiff's products were infringing. 542 F.3d at 886. As discussed *supra*, here, plaintiff has failed to allege with any specificity the customers to whom defendant allegedly spoke. Unlike the plaintiff in *Campbell Pet Co.*, which alleged that a customer approached its employees and told them that the defendant had "bad mouth[ed]" the plaintiff and its products, *see id*. at 882, plaintiff here points to no customer that has informed it of defendant's alleged bad mouthing. Notably, Mr. McAllister's declaration is bereft of any statement related to plaintiff's potential customers being warned away from plaintiff's products. (*See generally* ECF No. 20-2.) Moreover, other than sending cease and desist letters to plaintiff, there is no allegation here that defendant has attempted to have plaintiff's products removed from Colorado or anywhere else. *See Campbell Pet Co.*, 542 F.3d at 885-886 (stating that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process ….") (quotation omitted).[4]

In *Dudnikov*, the plaintiffs used eBay (an internet auction site) to sell certain images. 514 F.3d at 1067. Upon seeing plaintiffs' images on eBay, the defendants believed that the images infringed their copyrights, and, after contacting eBay, successfully suspended the plaintiffs' auction of the images, which allegedly had adverse consequences for the plaintiffs' business and future dealings with eBay. *Id*. The Tenth Circuit concluded that the exercise of specific personal jurisdiction was appropriate because the defendants' conduct, in seeking suspension of the plaintiffs' auction, resulted in the intentional cancellation of a Colorado auction and an effect on the plaintiff's Colorado business operations. *Id*. at 1075-76. Here, plaintiff has alleged no effect on its Colorado

---

[4]With respect to the cease and desist letters, plaintiff acknowledges that they do not form any part of its argument supporting specific personal jurisdiction. (*See* ECF No. 20 at 12-13 (stating that this case "is not about letters directed at [plaintiff], but concerns Defendant's efforts to use its patents to impede competition….")).

business operations. In its response, plaintiff asserts that it has been harmed "in terms of loss of sales or credibility," however, this assertion is unmoored from any citation to the Complaint or Mr. McAllister's declaration. (*See* ECF No. 20 at 14-15.) Again, notably, Mr. McAllister's declaration is bereft of any statement regarding plaintiff's loss of sales. (*See generally* ECF No. 20-2.) Moreover, to the extent that plaintiff alleges in the Complaint that sales have been lost (*see* ECF No. 1 at ¶ 36), this allegation is controverted (*see* ECF No. 23 at 5), and thus, need not be considered, *see Elecs. For Imaging*, 340 F.3d at 1349.[5]

As a result, the Court finds that specific personal jurisdiction does not exist over defendant.[6]

### B.     General Personal Jurisdiction

Unlike specific personal jurisdiction, general jurisdiction can exist when a plaintiff's causes of action are "entirely distinct" from a defendant's in-state activities. *Goodyear*, 564 U.S. at 924. The "paradigm" forum for the exercise of general personal jurisdiction over a corporation is "one in which the corporation is fairly regarded as home," such as the corporation's place of incorporation or principal place of business. *Id.* As the Supreme Court explained in *Goodyear*, it has sanctioned the exercise of general personal jurisdiction when a corporation conducted business, maintained its office, kept its files, and supervised its activities in the state in question. *Goodyear*, 564 U.S. at 928

---

[5] Notably, plaintiff does not allege that any of the units defendant sold between 2010 and 2014 were sales that plaintiff missed out on. Instead, plaintiff vaguely asserts that those sales "could" have been business for it. (*See* ECF No. 20 at 7-8 (claiming that one of the sales was to a company that is "exactly the type of customer that would purchase the products sold by Plaintiff, and is exactly the type of customer that could be lured away from purchasing from another Colorado business through allegations of infringement.")).

[6] In light of this Court's finding that defendant's contacts with Colorado do not arise from and are not related to plaintiff's causes of action, the Court need not address whether exercising specific personal jurisdiction over defendant would comport with fair play and substantial justice under the Due Process Clause. *See Campbell Pet Co.*, 542 F.3d at 884 (explaining that the substantial-justice factor only comes into play if the defendant has purposefully directed its activities at the forum state and those activities arise out of or relate to the litigation).

(citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413 (1952)).  The Supreme Court has declined to allow the exercise of general jurisdiction, though, when a corporation's contacts with the forum were sending its chief executive to the forum for a negotiation session, accepting checks drawn on a forum bank account, purchasing products from a forum enterprise for substantial sums, and sending its personnel to the forum for training.  *Id*. at 928-929 (citing *Helicopteros*, 466 U.S. at 416).  The Supreme Court explained that "mere purchases made in the forum State, even if occurring at regular intervals, are not enough to warrant a State's assertion of general jurisdiction over a nonresident corporation …."  *Id*. at 929 (quotation and alterations omitted).

In *Goodyear*, the pertinent defendants' only contact with the forum state was the distribution of a small percentage of its products within the forum by third-party affiliates of the defendants' parent company.  *Id*. at 921.  The Supreme Court found this contact with the forum to "fall far short of the continuous and systematic general business contacts necessary" to justify the exercise of general personal jurisdiction.  *Id*. at 929.  More recently, the Supreme Court has again addressed the scope of general personal jurisdiction.  In *Daimler AG v. Bauman*, 571 U.S. ___, 134 S.Ct. 746 (2014), the Supreme Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *Id*. at 760.  In terms of those affiliations, the Supreme Court focused upon a corporation's place of incorporation and principal place of business, but, without further explaining, noted that those places may not be the only affiliations justifying general personal jurisdiction.  *See id*. at 760-761.  Ultimately, the Supreme Court stated that a corporation's affiliations with a state must be "so continuous and systematic as to render it essentially at home in the forum State."  *Id*. at 761 (quotation, internal quotation, and alteration omitted).

9

Since *Daimler*, various Circuit Courts, albeit not the Federal Circuit, have examined the Supreme Court's decision. In *Brown v. Lockheed Martin Corp.*, the Second Circuit concluded that only in "a truly exceptional case" would a corporate defendant be treated as at home in a place other than its principal place of business or place of incorporation. 814 F.3d 619, 627 (2d Cir. 2016) (quotation omitted). The Second Circuit found the defendant's contacts—0.05% of its employees in the forum, 0.107% of its total annual revenue from the forum, a certificate to do business in the forum, and leasing buildings in the forum—to be insufficient under *Daimler*. *Id*. at 628-630.

In *Monkton Ins. Servs., Ltd. v. Ritter*, the Fifth Circuit described establishing general personal jurisdiction in a forum other than the place of incorporation or principal place of business as "incredibly difficult." 768 F.3d 429, 432 (5th Cir. 2014). In *Kipp v. Ski Enter. Corp. of Wis.*, the Seventh Circuit opined that *Daimler* "may have left some room for the exercise of general jurisdiction in the absence of incorporation or principal place of business in the forum state, [but] this is not one of those rare situations." 783 F.3d 695, 699 (7th Cir. 2015). In *Martinez v. Aero Caribbean*, the Ninth Circuit stated that the paradigm fora for general personal jurisdiction over a corporation are its place of incorporation and principal place of business, and "[o]nly in an exceptional case [would] general jurisdiction be available anywhere else." 764 F.3d 1062, 1070 (9th Cir. 2014) (quotation omitted).

In *Carmouche v. Tamborlee Mgmt., Inc.*, the Eleventh Circuit explained that "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." 789 F.3d 1201, 1205 (11th Cir. 2015). The Eleventh Circuit found insufficient a company's connections that were limited to having a forum bank account

and two forum mailing addresses, filing a financing statement with the forum's Secretary of State, joining a non-profit organization based in the forum, and consenting to the jurisdiction of a federal district court in the forum for all lawsuits arising out of an agreement with a third-party. *Id*. at 1204-05.

Arguably, the Tenth Circuit has not interpreted *Daimler* in exactly the same fashion. In *Am. Fid. Assurance Co. v. Bank of New York Mellon*, the Tenth Circuit rejected an argument that *Daimler* limited general personal jurisdiction to a corporation's principal place of business or state of incorporation except in exceptional circumstances. 810 F.3d 1234, 1241 (10th Cir. 2016). Instead, the Tenth Circuit concluded that *Daimler* reaffirmed *Goodyear's* standard that "general jurisdiction is proper when a corporation's affiliations with the state are so continuous and systematic as to render them at home in the forum state." *Id*. (quotation and emphasis omitted).

In light of these cases, at the very least, a plaintiff must show that a defendant's contacts with a foreign forum must be of such a nature that the defendant can be considered at home in that forum. *See Daimler*, 134 S.Ct. at 754, 760-761. Whether or not this showing is characterized as exceptional, incredibly difficult, rare, or just far from easy is of little import in a practical sense. The real substance is in the defendant's contacts or affiliations with the forum state. In that regard, this Court finds the Eleventh Circuit's explanation of the "at home" test in *Carmouche* the most helpful. To repeat, the Eleventh Circuit explained that a plaintiff must show that a "corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205.

As defendant accurately states in its reply (*see* ECF No. 23 at 2), plaintiff has not attempted to address the "at home" test articulated in *Goodyear* and *Daimler* (*see generally* ECF No. 20 at 15).

11

Instead, plaintiff asserts that defendant's advertising, sales, installation, unidentified bids for business, and warranty activities in Colorado constitute systematic and continuous activity justifying the exercise of general personal jurisdiction. (*See* ECF No. 20 at 15.) In light of the discussion *supra*, this is evidently inadequate, not least because the Supreme Court specifically held in *Daimler* that the proper inquiry is not concerned with continuous and systematic contacts in some sense, but, rather, continuous and systematic contacts rendering a corporation at home in the forum. *See Daimler*, 134 S.Ct. at 761. Here, it is undisputed that defendant is incorporated and maintains its principal place of business in Ohio. (*See* ECF No. 1 at ¶ 3.) In addition, plaintiff has failed to allege any facts indicating what activities characterize defendant's place of incorporation and principal place of business. Thus, it is not possible to ascertain whether those activities approximate defendant's activities in Colorado, or vice versa. *See Carmouche*, 789 F.3d at 1205.

As a result, the Court finds that general personal jurisdiction does not exist over defendant. Accordingly, the Court GRANTS the motion to dismiss.

### IV.    Conclusion

For the reasons discussed herein, the Court GRANTS the motion to dismiss (ECF No. 9), and DISMISSES WITHOUT PREJUDICE the Complaint (ECF No. 1). The Clerk is instructed to close this case in its entirety.

**SO ORDERED.**

DATED this 28th day of June, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge